ANDREW R. MUEHLBAUER, ESQ.
Nevada Bar No. 10161
SEAN P. CONNELL, ESQ.
Nevada Bar No. 7311
**MUEHLBAUER LAW OFFICE, LTD.**
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Telephone: 702.330.4505
Facsimile: 702.825.0141
Email: andrew@mlolegal.com
         sean@mlolegal.com

*Attorneys for Lorna Chase*

[additional counsel on signature page]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| LORNA CHASE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PAYSIGN, INC., MARK NEWCOMER, and MARK ATTINGER,<br><br>Defendants. | Case No. 2:20-cv-00585<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Lorna Chase ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Paysign, Inc. ("Paysign" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Paysign securities between March 12, 2019, and March 15, 2020, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Paysign provides prepaid card programs and processing services under the PaySign brand to corporations, government agencies, universities, and other organizations. The Company changed its name from 3PEA International Inc. to Paysign, Inc. on April 23, 2019.

3. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically,

Defendants made false and/or misleading statements and/or failed to disclose that: (i) Paysign's internal control over financial reporting was not effective; (ii) Paysign's information technology ("IT") general controls were not effective; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

4.     On March 16, 2020, during pre-market hours, Paysign announced that it would be unable to file its annual financial report with the SEC in a timely fashion because of an ongoing audit, advising investors that "management identified material weaknesses related to (i) assessment of internal controls over financial reporting and (ii) [IT] general controls."

5.     On this news, Paysign's stock price fell $0.93 per share, or 16.85%, to close at $4.59 per share on March 16, 2020.

6.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

9.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). Paysign is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

2

10. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

11. Plaintiff, as set forth in the attached Certification, acquired Paysign securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

12. Defendant Paysign is incorporated under the laws of Nevada, with principal executive offices located at 1700 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89012. The Company's securities trade in an efficient market on the Nasdaq Stock Market ("NASDAQ") under the ticker symbol "PAYS."

13. Defendant Mark Newcomer ("Newcomer") has served as Paysign's Chief Executive Officer at all relevant times.

14. Defendant Mark Attinger ("Attinger") has served as Paysign's Chief Financial Officer at all relevant times.

15. Defendants Newcomer and Attinger are sometimes referred to herein collectively as the "Individual Defendants."

16. The Individual Defendants possessed the power and authority to control the contents of Paysign's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of Paysign's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions

3

with Paysign, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

17. Paysign and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

18. Paysign provides prepaid card programs and processing services under the Paysign brand to corporations, government agencies, universities, and other organizations. The Company offers various services, including transaction processing, cardholder enrollment, value loading, cardholder account management, reporting, and customer service through Paysign, a proprietary card-processing platform. It also develops prepaid card products for healthcare reimbursement payments, pharmaceutical assistance, donor compensation, corporate and incentive rewards, and expense reimbursement cards; and payroll or general purpose reloadable cards, as well as gift or incentive cards. In addition, the Company offers Buy and Bill programs for patients to purchase directly from physician's office or through an infusion center for physician administered therapies; payment solution for source plasma collection centers; and Paysign Premier, a demand deposit account debit card, as well as customer service center and Paysign Communications Suite services. Its principal target markets for processing services comprise prepaid card issuers, retail and private-label issuers, small third-party processors, and small and mid-size financial institutions in the United States and internationally.

19. Paysign's customers include healthcare companies, major pharmaceutical companies and source plasma providers, large multinationals, prestigious universities, and social media companies.

**Materially False and Misleading Statements Issued During the Class Period**

20. The Class Period begins on March 12, 2019, when, during pre-market hours, Paysign filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2018 (the "2018 10-K"). The 2018 10-K stated, in relevant part:

> Our chief executive officer and chief financial officer evaluated the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934) as of December 31, 2018. ***Based on that evaluation, our chief executive officer and chief financial officer concluded that, as of the evaluation date, such controls and procedures were effective.***
>
> \* \* \*
>
> As of December 31, 2018 we conducted an evaluation, under the supervision and with the participation of our chief executive officer (our principal executive officer), our chief operating officer and our chief financial officer (also our principal financial and accounting officer) of the effectiveness of our internal control over financial reporting based on criteria established in Internal Control - Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission, or the COSO Framework. Management's assessment included an evaluation of the design of our internal control over financial reporting and testing of the operational effectiveness of those controls.
>
> A material weakness is defined within the Public Company Accounting Oversight Board's Auditing Standard No. 5 as a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the company's annual or interim financial statements will not be prevented or detected on a timely basis. ***Based upon this assessment, management concluded that our internal control over financial reporting was effective as of December 31, 2018.***

(Emphasis added.)

5

21. Appended to the 2018 10-K as exhibits were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, attesting that "[t]he information contained in the [2018 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

22. On May 8, 2019, Paysign filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2019 (the "1Q19 10-Q"). The 1Q19 10-Q stated, in relevant part:

> Our chief executive officer and chief financial officer are responsible for establishing and maintaining our disclosure controls and procedures. Disclosure controls and procedures means controls and other procedures that are designed to ensure that information we are required to disclose in the reports that we file or submit under the Securities Exchange Act of 1934 is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms, and to ensure that information required to be disclosed by us in those reports is accumulated and communicated to the our management, including our principal executive and principal financial officers, or persons performing similar functions, as appropriate to allow timely decisions regarding required disclosure. Our chief executive officer and chief financial officer evaluated the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934) as of March 31, 2019. ***Based on that evaluation, our chief executive officer and chief financial officer have concluded that, as of the evaluation date, such controls and procedures were effective.***

(Emphasis added.)

23. Appended to the 1Q19 10-Q as exhibits were signed certifications pursuant to SOX by the Individual Defendants, attesting that "[t]he information contained in the [1Q19 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

24. On August 7, 2019, Paysign filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2019 (the "2Q19 10-Q"). The 2Q19 10-Q stated, in relevant part:

6

> Our chief executive officer and chief financial officer are responsible for establishing and maintaining our disclosure controls and procedures. Disclosure controls and procedures means controls and other procedures that are designed to ensure that information we are required to disclose in the reports that we file or submit under the Securities Exchange Act of 1934 is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms, and to ensure that information required to be disclosed by us in those reports is accumulated and communicated to the our management, including our principal executive and principal financial officers, or persons performing similar functions, as appropriate to allow timely decisions regarding required disclosure. Our chief executive officer and chief financial officer evaluated the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934) as of June 30, 2019. ***Based on that evaluation, our chief executive officer and chief financial officer have concluded that, as of the evaluation date, such controls and procedures were effective.***

(Emphasis added.)

25. Appended to the 2Q19 10-Q as exhibits were signed certifications pursuant to SOX by the Individual Defendants, attesting that "[t]he information contained in the [2Q19 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

26. On November 6, 2019, Paysign filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2019 (the "3Q19 10-Q"). The 3Q19 10-Q stated, in relevant part:

> Our chief executive officer and chief financial officer are responsible for establishing and maintaining our disclosure controls and procedures. Disclosure controls and procedures means controls and other procedures that are designed to ensure that information we are required to disclose in the reports that we file or submit under the Securities Exchange Act of 1934 is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms, and to ensure that information required to be disclosed by us in those reports is accumulated and communicated to the our management, including our principal executive and principal financial officers, or persons performing similar functions, as appropriate to allow timely decisions regarding required disclosure. Our chief executive officer and chief financial officer evaluated the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of

7

1934) as of September 30, 2019. ***Based on that evaluation, our chief executive officer and chief financial officer have concluded that, as of the evaluation date, such controls and procedures were effective.***

(Emphasis added.)

27. Appended to the 3Q19 10-Q as exhibits were signed certifications pursuant to SOX by the Individual Defendants, attesting that "[t]he information contained in the [3Q19 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

28. The statements referenced in ¶¶ 20-27 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Paysign's internal control over financial reporting was not effective; (ii) Paysign's IT general controls were not effective; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

## The Truth Begins to Emerge

29. On March 16, 2020, during pre-market hours, Paysign announced that it would be unable to file its annual financial report with the SEC in a timely fashion because of an ongoing audit, advising investors that "management identified material weaknesses related to (i) assessment of internal controls over financial reporting and (ii) [IT] general controls."

30. On this news, Paysign's stock price fell $0.93 per share, or 16.85%, to close at $4.59 per share on March 16, 2020.

31. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have

8

suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

32. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Paysign securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

33. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Paysign securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Paysign or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

34. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

35. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

9

36. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Paysign;

- whether the Individual Defendants caused Paysign to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Paysign securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

37. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

38. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

10

- Paysign securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Paysign securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

39. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

40. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

# FIRST CLAIM FOR RELIEF

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

41. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

42. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

43. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other

11

members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Paysign securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Paysign securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

44.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Paysign securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Paysign's finances and business prospects.

45.     By virtue of their positions at Paysign, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants

were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

46. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Paysign, the Individual Defendants had knowledge of the details of Paysign's internal affairs.

47. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Paysign. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Paysign's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Paysign securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Paysign's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Paysign securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

48. During the Class Period, Paysign securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be

13

disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Paysign securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Paysign securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Paysign securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

49. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

50. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## SECOND CLAIM FOR RELIEF

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

51. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

52. During the Class Period, the Individual Defendants participated in the operation and management of Paysign, and conducted and participated, directly and indirectly, in the conduct of Paysign's business affairs. Because of their senior positions, they knew the adverse

14

non-public information about Paysign's misstatement of income and expenses and false financial statements.

53. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Paysign's financial condition and results of operations, and to correct promptly any public statements issued by Paysign which had become materially false or misleading.

54. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Paysign disseminated in the marketplace during the Class Period concerning Paysign's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Paysign to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Paysign within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Paysign securities.

55. Each of the Individual Defendants, therefore, acted as a controlling person of Paysign. By reason of their senior management positions and/or being directors of Paysign, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Paysign to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Paysign and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

56. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Paysign.

15

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

# DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: March 25, 2020

                  Respectfully submitted,

                  **MUEHLBAUER LAW OFFICE, LTD.**

                  /s/ Andrew R. Muehlbauer
                  ANDREW R. MUEHLBAUER, ESQ.
                  Nevada Bar No. 10161
                  7915 West Sahara Avenue, Suite 104
                  Las Vegas, Nevada 89117
                  Telephone: 702.330.4505
                  Facsimile: 702.825.0141
                  Email: andrew@mlolegal.com

                  POMERANTZ LLP
                  Jeremy A. Lieberman
                  (*pro hac vice* application forthcoming)
                  J. Alexander Hood II
                  (*pro hac vice* application forthcoming)
                  600 Third Avenue, 20th Floor
                  New York, New York 10016
                  Telephone: (212) 661-1100

```
 1    jalieberman@pomlaw.com
      ahood@pomlaw.com
 2
      POMERANTZ LLP
 3    Patrick V. Dahlstrom
      (*pro hac vice* application forthcoming)
 4    10 South La Salle Street, Suite 3505
      Chicago, Illinois 60603
 5    Telephone: (312) 377-1181
      Facsimile: (312) 377-1184
 6    pdahlstrom@pomlaw.com
 7
      HOLZER & HOLZER, LLC
 8    Corey D. Holzer
      (*pro hac vice* application forthcoming)
 9    1200 Ashwood Parkway, Suite 410
      Atlanta, Georgia 30338
10    Telephone: (770) 392-0090
      Facsimile: (770) 392-0029
11    cholzer@holzerlaw.com
12
13    *Attorneys for Plaintiff Lorna Chase*
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
```